# CIRCUIT COURT OF BALTIMORE CITY

Filed March 8, 1901.

ROSCOE M. PACKARD
VS.
THOMAS G. HAYES ET AL.

*Findlay & Mackenzie* for plaintiff.

*Wm. Pinkney Whyte, Bernard Carter, William S. Bryan, Jr.,* and *Thomas R. Clendenin* for defendants.

RITCHIE, J.—

The bill in this case is filed by the plaintiff as a taxpayer, and it prays for an injunction to restrain the Board of Awards from awarding to Samuel A. Rice the contract for the collection and the disposal of city garbage, and to restrain the said Rice from accepting or entering upon the execution of said contract. The alleged grounds upon which an injunction is asked are that, in several respects, the proposal of Rice was not in accordance with the specifications upon which bids were invited, and that therefore the board had no power to award the contract to him; the answer, besides setting up other defenses, insists that Rice's proposal was in accordance with the specifications, and the case is submitted on bill, answer and exhibits.

The letting of a contract for the proposed work comes within Sections 14 and 15 of the New Charter, the provisions of which, so far as they relate to this case, are, that proposals shall first be advertised for; that the bids shall be opened by the Board of Awards and the contract awarded by it to the lowest responsible bidder. The Commissioner of Street Cleaning prepared specifications, which were approved by the board, and then duly advertised for proposals based on the same. These specifications prescribed the manner of *collecting* the garbage, but left an open field for competition between different schemes or systems for its *disposal or reduction*. The various bids were opened by the Board on November 21st, 1900, and referred to the commissioner for examination, and he reported to the Board on the 26th of that month.

Among the different forms of proposal which were admissible under the specifications, the commissioner recommended the acceptance of some bid which embraced every kind of garbage, and covered the period of ten years. Among the schemes submitted for the disposal of the garbage he recommended as the best the one in use at Syracuse, N. Y., which is known both as the "Improved Holthaus Sanitary System" and as the "Syracuse System." Throwing out the bid of Michael T. Horner, which failed to propose any sanitary scheme of disposal, the lowest ten year bid which embraced all garbage, was that of Rice ($148,000 per annum,) and the next lowest was that of the American Contracting and Manufacturing Co. ($161,800 per annum,) and each proposed to use the Syracuse System of disposal or reduction. The other bidders were higher in amount and also proposed to use other systems.

The commissioner, however, advised the rejection of Rice's proposal upon the ground that it was not in accordance with the specifications, and advised the acceptance of the proposal of the American Company, as being that of the lowest responsible bidder who complied with all requirements, but the board overruled his exceptions and awarded the contract to Rice. This report of the Commissioner is the basis of the bill filed in this case, and the grounds upon which an injunction is asked are the same as were urged by the Commissioner for the rejection of Rice's bid and passed on by the Board of Awards.

Among other defences set up it is alleged that the plaintiff is simply lending the use of his name in the interest of the American Company, an unsuccessful bidder, and that the bill is not filed by him in good faith as a taxpayer: that the burden of taxation will not be increased by letting the contract to Rice; that the contract had already been awarded when the bill was filed, and the award has been ratified by the Mayor and City Council; that the Board of Awards had the right to construe the specifications which had been approved by it, and that, even if Rice failed to comply strictly with them, it was competent for the board, acting in good faith and in the interest of the public, to waive any non-compliance, unless such waiver contravened some ordinance or some provision of the Charter. In the view, however, which I take of the merits of the case, that is, of the question whether Rice's proposal was in accordance with the specifications or not, it is not necessary to pass on any of these collateral grounds of defence.

The ground most strenuously urged by the plaintiff against the sufficiency

of Rice's proposal, is that he failed to comply with the specification which provides, viz: "Each bidder must submit with his bid the scheme of garbage disposal which it is intended to accompany, *and including such plan, specifications and other information as may be necessary to enable the said Commissioner to determine the feasibility of it.*"

Rice's bid was in proper form and he submitted with it the scheme of disposal which he proposed to establish, but he did not submit therewith any *plan*, and the failure to do this is the chief ground upon which the plaintiff relies in asking for an injunction.

This specification is construed by the plaintiff as requiring the bidder to submit a plan of *the plant* which he proposed to erect, and it is argued that such was the plan intended, because, under the construction of the plaintiff, the commissioner was to determine whether the plant to be erected would be adequate to the requirements of such a city as Baltimore, and the plan of the proposed plant was to be made part of the contract.

But a plan of the plant to be erected is not the plan here intended. The purpose of the city is to contract for the use of some scheme or method of garbage disposal, and not for the erection of a garbage crematory. The scheme adopted will determine the character of the plant, and the contractor must see to it that its capacity is equal to the work he undertakes to do. All that the specifications require as to the plant is, that it shall be completed and ready for operation by June 1st, 1901; that the contractor shall establish such wharves, boats, buildings, furnaces, presses and other apparatus *"as may be necessary to enable him to perform the work specified in his contract,"* and that *"the capacity"* of the plant "must be sufficient to allow any necessary repairs to be made without interfering with the work of disposal."

The plan referred to, therefore, means such model or drawings as may be necessary to illustrate and explain, for the information of the commissioner, *the operation and practicability of the proposed scheme,* and not a plan of the plant by which the scheme or method is to be carried into effect, and when the commissioner has thus been fully advised as to the scheme or method, the model or drawings have served their purpose.

Again, the plaintiff contends that the filing of the plan in question was essential to the validity of the bid. But the terms of this specification do not absolutely require the filing of a plan. It provides that each bidder must submit with his bid his scheme of disposal, including such plan, etc., *"as may be necessary to enable the said commissioner to determine the feasibility of it."*

The manifest purpose, and the only purpose, of this provision was to provide such information as might be necessary to enable the Commissioner to judge *of the feasibility* of the proposed scheme. But if the Commissioner was already familiar with the scheme and assured of its feasibility, and the bidder knew, as Rice did, that such was the fact, it was not necessary to file a plan showing what the Commissioner already knew. In other words it was not necessary to do what was unnecessary.

Now the Syracuse system of disposal proposed by Rice is a well defined and recognized system, and one with which the Commissioner was thoroughly acquainted. In his report to the board he spoke of his visit to Syracuse, explained the system and described its advantages, and so thoroughly was he satisfied of its feasibility, that, although the specifications expressly provided that no award would be made after opening the bids, until the satisfactory character of the proposed scheme had been proved to the Commissioner by practical test, he recommended the adoption at once of the Syracuse system. He had seen it in operation during the previous summer and needed no further test. The only purpose of calling for a plan being to advise the Commissioner as to the feasibility of the proposed scheme, it would be most unreasonable to reject a bid simply because the bidder failed to communicate information of which the Commissioner was already possessed, and of which the bidder knew he was possessed.

Under these circumstances I do not think that the failure of Rice to file the plan in question is a valid objection to his bid.

The next ground upon which an injunction is asked is, that the specifica-

tions filed with Rice's bid differed from those upon which proposals were asked.

The form of proposal prepared by Commissioner, instead of incorporating by reference thereto the specifications on file in his office, was in such shape as to call for the filing of a copy of them with each bid, and he advertised that copies could be had at his office. They covered thirteen pages of typewritten matter. It is not denied that in three or four particulars the specifications filed by Rice differed from the official copy, but the answer shows that these variations were clerical errors, made by the typewriter in copying the official copy. It does not appear in the record why it was necessary for Rice to make a copy, but in reply to a question from the plaintiff's solicitor at the hearing, it was stated by Rice's solicitor that the Commissioner had not a sufficient supply of office copies, and, on condition that he should return the same to the Commissioner, Rice borrowed an office copy in order to make therefrom a copy for himself. /

These mistakes, however, are of such a character as to indicate of themselves that they were made by the typewriter, and also to make manifest the fact that Rice could have had no purpose in changing the official copy. One of them, on the face of his copy, would have subjected him, for failure to replace an ash can, to a fine of $1,000, instead of $1.00. It also appears that he had no knowledge of these mistakes when he sent in his bid and that, as soon as he heard of them, and before the award, he sent in an accurate copy for substitution. But however these variations may have occurred, they either make no change whatever from the meaning and intent of the official specifications, or, if any, the change is so unimportant as not to affect the sufficiency of Rice's bid in any degree.

The third objection to Rice's bid is founded on the specification which provides that, "two or more bids for the performance of the work under two different names will not be received from any one individual, firm or association."

The bill alleges that the bids of Michael T. Horner and of Rice "show unmistakable signs of having been prepared by the same person." It does not charge, except in this suggestive manner, that Rice put in two bids under different names, and this allega-

tion rests upon nothing but the fact that the same mistakes which occurred in the specifications filed by Rice, and already mentioned, are also found in the copy filed by Horner. This fact is evidence tending to show that both copies were duplicates, made by the same typewriter by one impression, while copying the official copy, but this coincidence of mistakes altogether fails to establish the fact that Horner's bid was a second bid put in by Rice in Horner's name.

To say nothing of the presumption to which Horner's bid is entitled, other facts go far to show that his bid was his own independent act. He is now, and for nearly four years has been, the contractor for the removal of city garbage, and his proposed method of disposal was the same as that now pursued under his existing contract, that is, to remove it to his farm on Bear Creek, and there use part of it himself as a fertilizer, and dispose of the rest to neighboring farmers. His bid was thrown out because he submitted no sanitary scheme of disposal, but there is no reason to doubt that he would have been glad to renew his present contract.

Nor is any possible motive suggested why Rice should have bid in Horner's name. The proposal made in Horner's name was for an entirely different method of disposal, and if Rice had wished to do so, he had a right to bid in his own name, both on Horner's scheme of disposal and on the Syracuse system. The American Company, whose bid the Commissioner advised the board to accept, made two proposals, one on the Holthaus or Syracuse system, and another on the Hydraulic system. But even if it had been made to appear that Horner's bid was another bid by Rice, I do not, in view of the fact that the two bids proposed different methods of doing the work, mean to imply that Rice's bid should have been rejected.

Finally, it is alleged that the scheme of disposal submitted by Rice is covered by letters patent, and that he therefore has no right to use it. Whatever might be the effect if this allegation were sustained, it is enough to say that it is fully met by the denial of the answer.

For the reasons stated a decree will be signed dismissing the bill.